# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARCUS TODD DRAKE,

      Plaintiff,

      v.                        CASE NO.  18-3174-SAC

(FNU) UNDERWOOD, et al.,

      Defendants.


## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Marcus Todd Drake. brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *in forma pauperis*.  Mr. Drake is a prisoner at the El Dorado Correctional Facility in El Dorado, Kansas.  For the reasons discussed below, Plaintiff is ordered to show cause why his complaint should not be dismissed.

## I.  Nature of the Matter before the Court

Plaintiff's Third Amended Complaint (ECF No. 32) alleges the defendants "purposely and repeatedly harassed and targeted plaintiff due to [his] being of the Asatru faith" while he was housed at the Winfield Correctional Facility (WCF).  *Id.* at 3.  He brings 24 counts claiming violation of his rights under the First, Fourth, Eighth and Fourteenth Amendments, as well as violation of the Religious Land Use and Institutionalized Persons Act (RLUPIA).  He bases his claims on twelve (12) incidents: 1) two notebooks in Plaintiff's possession belonging to the Asatru Call-Out were confiscated; 2) two letters Plaintiff wrote were seized; 3) Plaintiff was charged with

1

a disciplinary violation for allegedly altering an "O" in a sentence into an Aryan cross; 4) two study guides in Plaintiff's possession belonging to the Asatru Call-Out were confiscated; 5) the Asatru Call-Out was told where to stand on the religious grounds; 6) at least two books belonging to the Asatru Call-Out and in Plaintiff's possession were confiscated; 7) a folder belonging to Plaintiff containing correspondence and grievances related to his claims was confiscated and possibly destroyed; 8) a book belonging to Plaintiff titled "Creed of Iron" was confiscated; 9) Plaintiff received a harsh disciplinary sentence as a result of a disciplinary hearing where no wrong-doing by Plaintiff was proved; 10) Plaintiff was placed in administrative segregation; 11) evidence was not made available to Plaintiff during a disciplinary hearing; and 12) Plaintiff was identified as a member of a security threat group (STG) and his custody level was raised from minimum to maximum.

Plaintiff names nine (9) defendants: (FNU) Underwood, Corrections Officer (CO); (FNU) Gobel, Corrections Officer; (FNU) Woods, Corrections Officer; (FNU) Woods, Corrections Officer; Tyler Clark, Special Investigator; (FNU) Sharp, Corrections Officer; (FNU) McGuire, Corrections Officer; Grady Osborn, Chaplain; and (FNU) Wheeler, CSI. He requests relief in the form of $150,000 in compensatory damages from each named defendant, $250,000 in punitive damages from Defendant Clark, and an injunction ordering the Kansas Department of Corrections to remove his classification as a member of a Security Threat Group.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). The

Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff

believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### Defendants

To be properly named as a defendant in a § 1983 action, a person must personally participate in the alleged violation of constitutional rights. *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997). Plaintiff names two defendants, CO McGuire and Chaplain Osborn, whom he fails to mention as participating in any of the incidents of which he complains. Plaintiff fails to

allege that either was personally involved in any violation of his constitutional rights.  These two defendants are subject to dismissal from this lawsuit.

**First Amendment Free Exercise Claims**

**Legal Standard**

"Inmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted).  Free exercise claims are subject to a two-step inquiry.  First, the plaintiff has the burden of showing that a prison regulation or a defendant's actions "substantially burdened ... sincerely held religious beliefs."  *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).  If the plaintiff meets this requirement, the burden shifts to the defendant to "identif[y] the legitimate penological interests that justif[ied];' the impinging conduct."  *Id.* (citing *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010)).  "[N]ot 'every infringement on a religious exercise will constitute a substantial burden.'"  *Id.*  "[A]t a minimum the substantial burden test requires . . . more than an inconvenience to one's religious practice."  *Id.* at 882 (*quoting Abdulhaseeb*, 600 F.

3d at 1316).  Mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

### Count 1

Plaintiff claims his First Amendment rights were violated when Defendant Underwood confiscated two notebooks in Plaintiff's possession belonging to the Asatru Call-Out.

The threshold consideration with a free exercise claim under the First Amendment is whether Plaintiff's belief is "sincerely held" and "religious in nature."  *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (*citing DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)).  Plaintiff has included no allegation that his Asatru beliefs are sincerely held and religious in nature, nor does he include any facts from which such belief can be inferred.

Plaintiff also fails to show that his beliefs were substantially burdened by Defendant Underwood.  He includes no explanation of what was contained in the two confiscated notebooks or how their confiscation prevented him from practicing his religion.  Plaintiff's conclusory allegation that the notebooks were somehow related to Asatru or "belonged" to the call-out are not sufficient.  For these reasons, Plaintiff fails to state a claim in Count I of the complaint.

### Count 2

Plaintiff claims his First Amendment rights were violated when Defendant Clark seized two out-going letters that "in no way promoted 'gang activity' or 'violence.'"  ECF No. 31 at 6.

"While '[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech,'*Treff v. Galetka,* 74 F.3d 191, 194 (10th Cir. 1996), the Supreme Court has recognized that the control of mail to and from prisoners is a necessary adjunct to penal administration."  *Brown v. Saline Cty. Jail*, 303 F. App'x 678, 683 (10th Cir. 2008) (*citing see Thornburgh v. Abbott,* 490 U.S. 401, 407–08 (1989) (acknowledging that prison officials are better

equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world)).

As with Count 1, Plaintiff fails to include sufficient plausible factual allegations for the Court to evaluate this claim, such as, for example, who the letters were addressed to, when the seizures occurred, whether the letters were ultimately returned or mailed, whether Plaintiff received an explanation for the seizure, and whether he alleges the letters were related to his religious practice.

**Count 3**

Plaintiff claims his First Amendment rights were violated when Defendant Clark charged him with a disciplinary violation for altering an "O" in a sentence into an Aryan cross.

Again, Plaintiff fails to explain which First Amendment rights he claims have been violated or any additional facts surrounding the disciplinary charge. The Court needs more information to be able to evaluate this claim.

**Count 4**

Plaintiff claims his First Amendment rights were violated when Defendant Woods confiscated two study guides in Plaintiff's possession belonging to the Asatru Call-Out.

Plaintiff does not explain what was in the study guides and how their seizure substantially burdened his sincerely held religious beliefs or how they were essential to the free exercise of his religious beliefs. As with the previous counts, Count 4 is too general and vague to state an actionable claim.

**Count 6**

Plaintiff claims his First Amendment rights were violated when Defendant Gobel confiscated two books in his possession belonging to the Asatru Call-Out. Again, Plaintiff's wholly conclusory allegation is too vague to state a claim.

**Count 7**

Plaintiff claims his First Amendment rights were violated when Defendant Underwood repeatedly confiscated books in his possession belonging to the Asatru Call-Out. As with the previous counts, Count 7 fails to state a claim because it is conclusory and utterly lacking in support.

**Count 8**

Plaintiff claims his First Amendment right to petition the government was violated when "officials" at WCF confiscated and destroyed a folder containing all of his correspondence with the prison chaplain, other officials, and his unit team related to this lawsuit, as well as Form-9s and grievances.

Under the First Amendment, the government is prohibited from interfering with prisoners' use of the courts. The confiscation or destruction of legal papers may be a constitutional violation. *Purkey v. CCA Detention Center*, 339 F. Supp. 2d 1145, 1151-52 (D. Kan. 2004). However, plaintiffs are required to show actual injury to state a claim, i.e., that they were frustrated or impeded from pursuing a non-frivolous legal claim. *See Lewis v. Casey*, 518 U.S. at 351-53; *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *Carr v. Zwally*, 760 F. App'x 550, 556 (10th Cir. 2019).

Plaintiff fails to state a claim because he has not shown any actual injury or prejudice resulting from the alleged seizure of his papers. Furthermore, he fails to name any specific defendant who personally participated in the incident, as required to state a claim under § 1983.

**Count 9**

Plaintiff claims his First Amendment rights were violated when Defendant Clark confiscated a book titled "Creed of Iron." He further alleges the book was previously approved by prison officials.

Again, Plaintiff's claim fails due to lack of factual allegations. He does not describe when the confiscation occurred or the circumstances surrounding it. He does not explain what the book is about or the proffered explanation for the seizure. Moreover, it is not clear whether Plaintiff is claiming an infringement of his religious rights or the right to freedom of expression.

## RLUIPA Claim

**Count 5**

Plaintiff claims the RLUIPA was violated when Defendant Sharp told Plaintiff and the rest of the Asatru Call-Out where they can and cannot stand on the religious grounds.

Section 3 of the RLUIPA provides:

No government shall impose a substantial burden on the religious exercise of a person ... confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under the RLUIPA, Plaintiff bears the burden of showing that the activity at issue is a religious exercise, and that Defendants have substantially burdened that exercise. 42 U.S.C. § 2000cc-1. The burden then shifts to the government to show that the government action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b). The RLUIPA is to be construed broadly to favor protection of religious exercise. 42 U.S.C. § 2000cc-3(g).

Recovery under RLUIPA is limited to official capacity claims for equitable relief. *See Sossamon v. Texas*, 563 U.S. 277, 279 (2011)(holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012)(noting RLUIPA does not permit individual capacity claims).

Plaintiff has failed to allege that Defendant Sharp's action created a substantial burden upon his exercise of his truly held belief. He again seems to be under the misconception that merely waving the flag of religion provides him with a cause of action. The Court fails to see how directing the members of the call-out where to stand creates a substantial burden on Plaintiff's religious practice. Moreover, the arrangement of the different call-outs on the religious grounds would clearly seem to involve security and safety concerns, which is a compelling government interest.

**Fourth Amendment Claims**

The Fourth Amendment prohibits unreasonable searches and seizures. However, the U.S. Supreme Court has "conclude[d] that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Likewise, "the same reasons that le[d] [the Supreme Court] to conclude that the Fourth Amendment's proscription against unreasonable searches is

inapplicable in a prison cell, apply with controlling force to seizures." *Id.* at 528 n.8; *see also Carr v. Zwally*, 760 F. App'x 550, 557 (10th Cir. 2019), and *Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 639 (10th Cir. 2001).

Consequently, Counts 10, 11, 12, 13, and 14 of the complaint alleging violation of Plaintiff's Fourth Amendment rights are subject to dismissal.

## Eighth Amendment Claims

### Legal Standard

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

In order to state a claim of cruel and unusual punishment, the plaintiff has to establish "deliberate indifference." The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under

conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Martinez*, 430 F.3d at 1304. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride*, 240 F.3d at 1291; *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001)(Deliberate indifference "requires both knowledge and disregard of possible risks."). It is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837–38; *Barney*, 143 F.3d at 1310.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.*; *Barney*, 143 F.3d 1311. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration." *Id.*

On the other hand, the court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved. *See Turner v. Safley*, 482 U.S. 78, 85 (1987). "[M]aintaining

internal security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

**Count 15**

Plaintiff alleges his Eighth Amendment rights were violated when Defendant Wheeler "handed down such a harsh sentence, even though he failed to prove any wrongdoing." ECF No. 31, at 11. Plaintiff makes no additional allegations under this count. He does not further describe the sentence or the alleged disciplinary violation. Plaintiff certainly fails to allege any prison condition that posed a substantial risk of harm as required to state an Eighth Amendment claim.

Moreover, if the sentence involved the loss of good-time credit, the Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule applies not only when the prisoner challenges his conviction but also when he challenges findings of guilt of prison disciplinary infractions. *Balisok*, 520 U.S. at 648.

**Count 16**

Plaintiff repeats the allegations of Count 15, with the addition of the statement that the disciplinary sentence was "as a result of [Defendant] Clark's investigation." Id. As with Count 15, Plaintiff fails to state a claim of violation of his Eighth Amendment rights.

**Count 17**

Plaintiff claims his Eighth Amendment rights were violated when Defendant Clark placed him in administrative segregation pending investigation even though Clark had proved no wrongdoing by Plaintiff.

"[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983). Plaintiff "has not alleged sufficient facts to show that his placement in administrative segregation, which is a common occurrence in prisons, gave rise to a substantial risk of serious harm" as required to state a claim for violation of his Eighth Amendment rights. *See Driggers v. Clark*, 422 F. App'x 747, 750 (10th Cir. 2011).

### Fourteenth Amendment Claims

**Count 18**

Plaintiff claims his Fourteenth Amendment due process rights were violated when Defendant Wheeler failed to make evidence available to him during a disciplinary hearing.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012)(quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

The Tenth Circuit considered and rejected arguments regarding the alleged adverse impact of a disciplinary record upon a prisoner's security classification. *Harrison*, 490 F. App'x at 993 (citing see *Marshall v. Morton*, 421 F. App'x 832, 837–38 (10th Cir. 2011)). In *Marshall*, the Circuit concluded that a reduction in an inmate's security classification does not implicate a liberty interest and that the other privileges lost with such a reduction do not impose an atypical hardship compared to the normal incidents of prison life. *Id.* at 838; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding an inmate has no protected liberty interest in prison employment).

On the other hand, "[d]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in earned good time credits." *Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)).

If a protected liberty interest is implicated in a disciplinary proceeding, due process is satisfied if the inmate receives: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). Furthermore, if there is some evidence to support the hearing officer's decision to revoke good time credits, then the requirements of procedural due process have been met. *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant inquiry is whether there is any evidence that could

support the conclusion reached by the disciplinary board." *Id.* at 455–56. The decision can be upheld even if the evidence supporting the decision is "meager". *Id.* at 457.

Because Plaintiff has not shown he had a protected liberty interest by alleging either atypical and significant hardship or that the duration of his sentence was affected, the Fourteenth Amendment is not implicated. *See Driggers*, 422 F. App'x at 750 (quoting *Sandin*, 515 U.S. at 484) (finding because the plaintiff's allegations do not implicate "atypical and significant hardship . . . in relation to the ordering incidents of prison life, the do not impact a constitutionally protected liberty interest). Plaintiff fails to state a claim for violation of his Fourteenth Amendment rights.

### Count 19

Plaintiff alleges his Fourteenth Amendment rights were violated when Defendant Wheeler failed to prove any wrongdoing by Plaintiff during the disciplinary hearing.

As with Count 19, Plaintiff does not establish that a protected liberty interest was implicated in his disciplinary proceedings and therefore he cannot state a claim for denial of due process.

### Count 20

Plaintiff claims his Fourteenth Amendment rights were violated when Defendant Clark failed to prove any wrongdoing by Plaintiff during his internal investigation of Plaintiff's mail.

Again, Plaintiff does not provide sufficient information to state a claim.

### Count 21

Plaintiff alleges his Fourteenth Amendment equal protection rights were violated when officials at WCF confiscated and destroyed his folder containing legal papers.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."). Individuals are "similarly situated" only if they are alike "in all relevant respects." *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quotation marks omitted).

Plaintiff has not alleged facts that a specific official at WCF treated him differently than other similarly situated prisoners. *See Requena*, 893 F.3d at 1210. Hence, Plaintiff fails to state an equal protection claim.

**Count 22**

Plaintiff claims his Fourteenth Amendment due process rights were violated when Defendant Clark placed Plaintiff in administrative segregation pending investigation and made a disciplinary report based on Plaintiff's possession of the book "Creed of Iron."

Plaintiff has failed to show that he was deprived of a liberty interest protected by the Constitution that entitled him to due process protections. In the prison context, "[a] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (internal quotation marks omitted). Four nondispositive factors are considered in determining whether a segregation imposes such a hardship: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate." *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007). In considering those

factors, the Court "must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

Plaintiff has not included enough detail for the Court to determine whether his placement in administrative segregation pending investigation implicated a liberty interest. Count 22 fails to state a claim.

**Count 23**

Plaintiff claims his Fourteenth Amendment due process rights were violated when Defendant Clark activated "security threat group" status on Plaintiff, causing Plaintiff's custody level to be raised from minimum to maximum and causing Plaintiff to be transferred to a maximum security facility.

An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221–222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Indeed, inmates have "no legitimate statutory or constitutional entitlement" even if a new classification would cause that inmate to suffer a "grievous loss." *Moody,* 429 U.S. at 88 n. 9. Instead, the custody classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225; *see also Hornsby v. Jones*, 392 F. App'x 653, 656 (10th Cir. 2010).

Count 23 fails to state a claim.

**Retaliation**

**Count 24**

Plaintiff claims Defendant Clark retaliated against him for filing this lawsuit. He states he filed this lawsuit in July of 2018, two news outlets ran a story about the lawsuit in September of 2018, and Plaintiff was arrested, charged with STG activity and transferred to a maximum security facility in October of 2018.

Prison officials may not retaliate against an inmate because of the inmate's exercise of his right of access to the courts. *Gee v. Pacheco*, 627 F.3d 1178, 1189 ((10th Cir. 2010) (brackets and quotation marks omitted). "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990)(plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*,

24 F. App'x 845, 848 (10th Cir. 2001)(citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson*, 149 F.3d at 1144)); *Strope*, 381 F. App'x at 884 (a plaintiff has the "rigorous burden . . . to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer"); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

In addition, the Tenth Circuit has found that "a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 800, 202 L. Ed. 2d 589 (2019) (*quoting O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)).

As with Plaintiff's other claims, he has not included sufficient specific facts to state a claim for unconstitutional retaliation. His sole supporting allegation is that he was charged with a disciplinary violation and transferred shortly after his lawsuit was publicized. Such support is not sufficient. *See Strope*, 381 F. App'x at 883 ("[W]e have consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim.")

**Claims for Damages**

Section 1997e(e) . . . provides in pertinent part:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert.*

*denied*, 536 U.S. 904 (2002)(applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e). Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights. The Court finds that Plaintiff's claim for actual or compensatory damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

## IV. Response Required

For the reasons stated herein, Plaintiff's complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why his complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the complaint being dismissed for the reasons stated herein without further notice.

Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file an amended complaint in which he (1) alleges sufficient facts to state a claim for a federal

---

[1] In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (18-3174-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

constitutional violation and show a cause of action in federal court; and (2) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient complaint.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **December 5, 2019**, in which to show good cause, in writing, why his complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **December 5, 2019**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS SO ORDERED.**

DATED:  This 5th day of November, 2019, at Topeka, Kansas.


**s/  Sam A. Crow**
**SAM A. CROW**
**U.S. Senior District Judge**